**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION at COVINGTON**

**CIVIL ACTION NO. 09-CV-98-WOB**

**CARL WILEY** **PLAINTIFF**

**VS.** **MEMORANDUM OPINION AND ORDER**

**BOONE COUNTY SHERIFF'S OFFICE, ET AL.** **DEFENDANTS**

Plaintiff Carl Wiley is confined in the Loretto Federal Correctional Institution ("FCI-Loretto"), which is located in Loretto, Pennsylvania. On July 2, 2009, Wiley filed a *pro se* prisoner civil rights complaint asserting claims under 42 U.S.C. § 1983 [Record No. 2]. The named defendants are: (1) the Boone County, Kentucky, Sheriff's Office; (2) Boone County Sheriff Michael A. Helmig; and (3) Edward Prindle, whom Wiley identifies as the "Jailer," presumably of the Boone County Jail.

The Complaint is before the Court for screening, pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).[1] Under 28 U.S.C. § 1915(e)(2), a district court has authority to dismiss a case at any time if it determines either that the action is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. For the reasons set forth below, the Court will dismiss Wiley's complaint without prejudice for failure to exhaust the administrative remedy process.

---

[1] The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

CLAIMS ASSERTED

Although Wiley is currently confined in FCI-Loretto, his claims relate to the conditions of his prior confinement in the Boone County, Kentucky Jail, which is located in Burlington, Kentucky. Wiley alleges that, due to the Boone County Jail's gross negligence, he contracted tuberculosis while confined there in 2008. Wiley alleges that the defendants violated his right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment of the United States Constitution.

PROCEDURAL HISTORY
1. The Complaint

Summarized, Wiley states that he has been in federal custody since September 30, 2005. In late 2007 or in early 2008, while he was in federal custody but prior to his transfer to his present place of confinement, he was confined in the Boone County Jail for ten months. Wiley claims that during that ten-month period he was exposed to, and contracted, tuberculosis. On September 9, 2008, Wiley underwent a final tuberculosis test. On that date, he tested "positive" for tuberculosis. He was transferred to a federal prison facility in Oklahoma two days later.

He alleges that the Boone County jail was "grossly negligent" in allowing conditions to exist which were conducive to the spread of tuberculosis. Specifically, Wiley claims that the Jailer and the Boone County Sheriff failed to prevent the spread of the infectious disease by testing, screening and separating other inmates who suffered from the infection.[2]

[2] Wiley states as follows:

"The jail deal {sic} with ICE detainees, city state and federal prisoners all housed together in pods that subject their prisoners to cough and sneezes of untested prisoners and to the hazard and risk of TB germs and getting a TB infection. The

Wiley alleges that he has sustained serious physical injuries as a result of contracting tuberculosis. He also claims that he has suffered various adverse physical side effects from the medications which he has been prescribed (Pyridoxine HCI 50 mg and Isoniazid). Wiley demands unspecified monetary damages and punitive damages.

2. The Order of July 13, 2009 [Record No. 3]

On July 13, 2009, the Court entered two Orders. The Order docketed as Record No. 3 directed Wiley to file evidence of his efforts to administratively exhaust his claims. In his response, Wiley stated that "At all times during my temporary custody in the Boone County Jail, I was a federal prisoner awaiting final disposition of federal offense and to be promptly returned back to federal custody." [Record No. 5-3].

Wiley stated that he had been unable to complete the grievance process at the Boone County Jail because he was transferred to the Federal Transit Center in Oklahoma City, Oklahoma, just two days after he received his positive TB test results on September 9, 2008. Wiley provided the following explanation:

> "Once I was back in federal custody I couldn't use the Bureau of Prisons grievance appeal process other than a complaint under 42 U.S.C. § 1983, to the best of my knowledge to properly proceed with a civil action against the defendants in this civil action."

[*Id*.].

---

> Sheriff and the Jailer failed to do any act which it was their duties to the prisoners to do, knowing and having reason to know of facts that their conduct posed an unreasonable risk of exposure to the TB germs. . . "

[Record No. 2, p.2].

DISCUSSION

1. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, such as excessive force, to exhaust all available administrative remedies *before* suing in federal court. *See Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999).[3]

Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it. For any issue the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999). Exhaustion under the PLRA is mandatory and unexhausted claims cannot be brought in federal court. *See Porter v. Nussle*, 534 U.S. at 524; *Jones v. Bock*, 127

---

[3] The Third Circuit in *Lyons v. United States Marshals*, 840 F.2d 202 (3rd Cir. 1988) has explained the benefits which exhaustion yields:

> The exhaustion requirement promotes: (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

*Id.* at 205.

The Sixth Circuit has repeatedly underscored the underlying reasons for exhaustion, explaining that it is a statutory requirement and that "the importance of using the prison grievance process [is] to alert prison officials to problems." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *see also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 308-09 (6th Cir.1999).

S.Ct. 910, 919 (2007); *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006). The Supreme Court has emphasized that the exhaustion requirement found in the PLRA mandates "proper exhaustion," which demands compliance with prison procedural rules. *Ngo*, 126 S. Ct. at 2387.

In *Jones,* the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. at 921 (overruling Sixth Circuit precedent to the contrary). *Jones* guided lower federal courts as to screening prisoner complaints under 28 U.S.C. § 1915A.

The *Jones* decision does not mean that prisoner complaints will never be subject to *sua sponte* dismissal for failure to exhaust administrative remedies. The Court explained:

> A complaint is subject to dismissal for failure to stale a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, *see* Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract. *See Leveto v. Lapina*, 258 F.3d 156, 161 (C.A. 3 2001) *("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face"* (internal quotation marks omitted)). *See also Lopez-Gonzalez v. Municipality of Comerio*, 404 F.3d 548, 551 (C.A. 1 2005) (dismissing a complaint barred by the statute of limitations under Rule 12(b)(6)); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (C.A. 2 1998) (dismissing a complaint barred by official immunity under Rule 12(b)(6)).

*Jones*, 127 S. Ct. at 920-21 (emphasis added).

The Fourth Circuit has held that even if it is not apparent from the pleadings that there are available administrative remedies that the prisoner failed to exhaust, a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address

the issue. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Other courts have held that, even in light of the Supreme Court's decision in *Jones v.Bock*, district courts are still authorized to dismiss a complaint where failure to exhaust is apparent from the face of the complaint, and are also allowed *sua sponte* to inquire into whether a claim has been exhausted and dismiss the complaint after giving the inmate notice and an opportunity to address the issue. *See, e.g., Clayborne v. Epps*, 2008 WL 4056293, 5 (S. D. Miss., 2008); *Anderson v. Donald*, 2008 WL 73672, at * 2 (11th Cir. Jan. 8, 2008), *cert. denied*, 2008 WL 552935 (Mar. 3, 2008); *Bell v. Holden*, 2008 WL 544679, at * 2 (M .D. La. Feb. 28, 2008) (citing *Tanner v. Fed'l Bureau of Prisons*, 475 F. Supp.2d 103, 105 (D.D.C.2007)) (adopting Magistrate Judge's Report and Recommendation).[4]

2. Application of Law to Facts

In the July 13, 2009 Order [Record No. 3], the Court gave Wiley an opportunity to submit documentation showing that he had administratively exhausted his medical claims. Wiley responded that his transfer to Oklahoma prevented him from pursuing administrative remedies at the Boone County Jail. Wiley argued that, even though he was a federal prisoner at all relevant

---

[4] *See also Soler v. Bureau of Prisons*, 2007 WL 496472 (N .D. Fla. Feb. 12, 2007) ( nothing in *Jones* precludes the *sua sponte* dismissal of the complaint where it is clear from the pleadings that the prisoner has in fact failed to exhaust his administrative remedies); *Sanks v. Williams*, 2007 WL 3254368 (S.D. Ga. November 2, 2007) (slip op.) (same); *Colston v. Cramer*, 2007 WL 1655412 (E. D. Mich. June 07, 2007) (same); *Michowski v. Mathai*, 2007 WL 1500333 (E.D. Mich. May 23, 2007) (same); *Ghosh v. McClure*, 2007 WL 400648 (S. D. Tex. Jan. 31, 2007) (same).

times, he was unable to pursue the Bureau of Prisons' ("BOP") administrative remedy process.[5]

Wiley asserted in general, broad and conclusory terms that he was unable to exhaust his claims in either system. He offered no specific reasons why he had been unable to pursue either administrative remedy process (Boone County Jail and/or BOP).

Wiley's excuses for failing to exhaust his claims are not persuasive. A transfer would not have prevented him from requesting the Boone County Jail officials to mail him the proper grievance forms, which he could have then completed and mailed back to the Jail for processing. Additionally, Wiley's transfer certainly would not have prevented him from pursuing federal administrative remedies, as he admits that he was in federal custody at all relevant times, and that he was transferred to a federal facility immediately after receiving his test results. *See*, *e.g.*, *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (subsequent transfer to another facility does not excuse obligation to exhaust administrative remedies); *Prickett v. Lawson*, No. 607CV041, 2008 WL 5046063, at *3 (S.D. Ga. Nov. 24, 2008) (same); *Sims v. Blot*, 2003 WL 21738766, at *4 (S.D. N.Y. July 25, 2003) (same); *Thomas v. Henry*, 2002 WL 922388, at *2 (S.D. N.Y. May 7, 2002) (finding transfer of prisoner from a city to a state prison did not relieve him of obligation to pursue the grievance procedures).

---

[5] The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See* § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel. *See* § 542.15 (a) - (b).

Even in light of the *Jones* case, it is apparent that Wiley's Eighth Amendment claims are before the Court prematurely because they have not been administratively exhausted in any forum. The Complaint will be dismissed without prejudice to Wiley exhausting his Eighth Amendment claims.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff Carl Wiley's Complaint [Record No. 2] is **DISMISSED WITHOUT PREJUDICE**.

(2) Judgment shall be entered contemporaneously with this Memorandum, Opinion and Order in favor of the named defendants.

This 4th day of August, 2009.




**Signed By:**
***William O. Bertelsman*** WOB
**United States District Judge**